**BROCKMEIER, n.k.a. Sena, Appellant and Cross–Appellee,**

**v.**

**BROCKMEIER, Appellee and Cross–Appellant.**

[Cite as *Brockmeier v. Brockmeier* (1993), 91 Ohio App.3d 689.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–920660, C–920690.

Decided Nov. 10, 1993.

690

*Hollis A. Moore III,* for appellant and cross-appellee.

*G. Ernie Ramos, Jr.,* for appellee and cross-appellant.

SHANNON, Judge.

The petitioner-appellant, Martha Ann Brockmeier (Sena), appeals from the trial court's determination to grant the motion to modify child-support obligations filed by petitioner-appellee, Frederick Brockmeier IV. In her assignment of error and accompanying argument Martha contends that the trial court erred to her prejudice in granting the modifications because Frederick's loss of employment and consequent loss of income were caused by his voluntary act and, therefore, do not constitute a change of circumstances upon which a modification of child-support obligation may be sought. We sustain this assignment of error.

In his cross-appeal, Frederick asserts one assignment of error in which he argues that the trial court erred to his prejudice in granting Martha's motion for contempt for his failure to pay educational expenses of his children, failure to reimburse Martha for uninsured medical expenses for his children, and failure to pay child support, all pursuant to certain paragraphs of the Separation Agreement and Stipulation Modifying the Separation Agreement entered into by the parties. In his accompanying arguments, Frederick contends that: (1) it is not contempt to seek a modification due to a change in circumstances; (2) absent a finding of contempt, a party should not be required to pay the adverse party's attorney fees, nor should a suspended jail sentence be imposed; and (3) the trial court erred in its inconsistent determination of a terminus for the retroactive application of the modified child support. We overrule Frederick's assignment of error.

Martha and Frederick were divorced in 1984. Martha was awarded custody of their three minor children. Frederick's child-support obligations were contained in the provisions of both the Separation Agreement executed by the parties on July 27, 1984, and the Stipulation Modifying Decree of Dissolution of Marriage and Separation Agreement, which was entered of record, *nunc pro tunc* to January 1, 1986, in the trial court's August 8, 1992 Entry Sustaining and Overruling Objections and Modifying Report of Referee.

Frederick was employed as an attorney by a Cincinnati law firm at the time of the dissolution of the parties' marriage and until his resignation on February 27, 1990. His resignation was demanded by his employer because of accounting irregularities in his expense vouchers. On May 16, 1990, Frederick surrendered his license to practice law in Ohio, by which act he knew he was permanently relinquishing his right to practice law in Ohio, because he hoped to avoid either a grievance procedure or criminal charges being brought against him. See *In re Resignation of Brockmeier* (1990), 51 Ohio St.3d 603, 554 N.E.2d 114. Criminal charges were brought and on June 21, 1990, he entered a guilty plea to a felony theft charge arising from his misappropriation of funds. Consequently, he was incarcerated for three months, received an eighteen-month suspended sentence, was placed on probation for five years, ordered to make restitution to his employer, and ordered to perform two hundred fifty hours of community service.

Through December 1989, Frederick was in full compliance with his child support, education-related payments, and other obligations to his children. Up to and including the month of August 1990, Frederick had paid $7,990 for child support against a total obligation of $20,280.[1] He had failed to provide medical and health insurance coverage, reimbursement for certain school expenses, out-

---

1. Arrearages continued to accumulate, however, after this time.

of-pocket medical expenses, and summer camp expenses, as well as contributions to his children's educational trust funds.

■ The referee concluded that Frederick's substantial decrease in his earnings since March 1990 was voluntary in nature so as to warrant the imputation of income to him at a level equal to that of his pre-March 1990 earnings. The trial court disagreed and sustained Frederick's objection to the referee's Conclusions of Law, determining that the reduction in Frederick's earnings was involuntary. We disagree with the trial court's determination.

■ In assessing a motion for modification of child support, the court must use a two-step process. *Cheek v. Cheek* (1982), 2 Ohio App.3d 86, 87, 2 OBR 95, 96–97, 440 N.E.2d 831, 833. It first must determine whether the movant has demonstrated a change in circumstances. If there has been a change of circumstances demonstrated, the court may then make an appropriate modification. *Id.; Cole v. Cole* (1990), 70 Ohio App.3d 188, 190, 590 N.E.2d 862, 964. We will not reverse a trial court's judgment on either of these steps unless the trial court has abused its discretion. See *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030.

"Discretion" has been defined as follows:

" 'Discretion, when applied to a court of justice, ordinarily means sound discretion, not wilful or arbitrary, but regulated by well-known and established principles of law, or such as may be exercised without violating any principle of law. Using the term in this sense, the rule generally applicable is that an order or ruling made, or act done, by a court in a matter within its discretion will not be disturbed by a reviewing court unless it plainly and manifestly appears that there has been an abuse of discretion, and that thereby the rights of the party complaining have probably been prejudiced.

" 'It is difficult to define exactly what is meant by "abuse of discretion," and practically impossible to lay down any general rule as to what it consists of, since it depends upon the facts in each particular case. As the term is ordinarily used, it has been said to imply not merely an error in judgment, but perversity of will, passion, or moral delinquency—that there was an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. The trial court abuses its discretion when it fails or refuses properly to apply the law to conceded or undisputed facts * * *.' " *Wood v. Wood* (Aug. 19, 1981), Muskingum App. No. CA 80–28, unreported, 1981 WL 6387, quoting 5 Ohio Jurisprudence 3d (1978) 162–163, Appellate Review, Section 590, with accompanying citations.

We have reviewed the trial court's determination of the first step of the two-step process necessary for child-support modification, and we hold that the trial court abused its discretion in finding that Frederick's intentional conduct and its

foreseeable results constituted a change in circumstances so as to warrant modification of his support obligation.

Whether a substantial decrease in earnings is voluntary or involuntary under the facts of the case *sub judice* is a question of law. It has long been the law in Ohio that "changes in the circumstances of the parties that may be considered must be material and not purposely brought about by the complaining party, and must be considered on the basis that the judgment sought to be modified was justified and proper when made." *Nash v. Nash* (1945), 77 Ohio App. 155, 157, 32 O.O. 409, 410, 65 N.E.2d 728, 730, citing *Olney v. Watts* (1885), 43 Ohio St. 499, 3 N.E. 354.

A majority of Ohio cases which have examined the effect of criminal conduct on rights to modification of child-support obligations have held the conduct to be voluntary. See *Cole, supra; Williams v. Williams* (Sept. 24, 1992), Franklin App. No. 92AP–438, unreported, 1992 WL 246020; *Mannasmith v. Mannasmith* (July 26, 1991), Marion App. No. 9–90–44, unreported, 1991 WL 217317. But, see, *Peters v. Peters* (1990), 69 Ohio App.3d 275, 590 N.E.2d 777. In fact, "[t]he current trend in the courts of Ohio is to refuse to modify or terminate a child support obligation of one, who through his own volition, became unemployed or underemployed thereby failing in his duty to support a minor child." *Cole, supra*, 70 Ohio App.3d at 193, 590 N.E.2d at 865. We agree with the reasoning of the courts which have held such conduct voluntary. The inability of an obligor who commits a crime to pay child-support obligations arises from "circumstances which he could have reasonably anticipated. There are no guaranties of probation or other forms of disposition when convicted of a criminal offense. It is not 'state action' which reduced his income, but his own willful acts." *Cole, supra*, at 194, 590 N.E.2d at 866.

Furthermore, as pointed out by the court in *Williams, supra:*

"A parent cannot, by intentional conduct or mere irresponsibility, seek relief from this duty of support. Defendant, who by his own wrongful conduct placed himself in a position that he is no longer available for gainful employment, is not entitled to relief from his obligation to support his child. Incarceration was a foreseeable result of his criminal conduct and is thus deemed a voluntary act in and of itself. Furthermore, defendant's guilty plea literally made his incarceration voluntary because the five-year imprisonment was a specific term to which he agreed in his plea."

To hold Frederick's misappropriation of funds and his consequent surrender of his license, his resignation, and his incarceration to be involuntary conduct is "contrary to the fundamental and equitable principle that wrongdoers ought not benefit from their own wrongdoing." *Williams, supra.* The underpinning of the

statutes concerning child-support guidelines is the best interest of the child. Frederick should not benefit at the expense of his children.

Because we hold, as a matter of law, that Frederick's actions constitute a voluntary change of circumstances, we conclude that the trial court abused its discretion in determining that there was an involuntary change in circumstances warranting a modification of child support. A "[v]oluntary reduction in one's earnings does not constitute a substantial change in circumstances warranting a modification of child support." *Shastid v. Shastid* (Mar. 8, 1989), Hamilton App. No. C–870665, unreported. We, therefore, sustain Martha's assignment of error.

As to the issues raised by Frederick in his cross-appeal, we hold the trial court did not err in granting Martha's motion for contempt. There is no dispute that Frederick did not fully comply with the existing court order either prior to his filing of his motion to decrease child support or subsequent thereto. While he argues that he should not be held in contempt for seeking modification due to a change in circumstances, this argument is not appropriate under the facts of the case *sub judice.* Frederick was not held in contempt for exercising his rights. He was held in contempt for noncompliance with a court order. The law is clear. "A person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer * * *." R.C. 2705.02(A). The person who fails to comply with an order has the burden to prove his inability to pay and it is not a prerequisite to a finding of contempt that the violation of the court order be purposeful, willing or intentional. *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 140, 15 OBR 285, 287–288, 472 N.E.2d 1085, 1088; *Johnson v. Johnson* (1991), 71 Ohio App.3d 713, 595 N.E.2d 388. If the dictates of the order are not followed, a contempt citation will follow. *Pugh, supra,* 15 Ohio St.3d at 140, 15 OBR at 288, 472 N.E.2d at 1088, quoting *Pedone v. Pedone* (1983), 11 Ohio App.3d 164, 11 OBR 447, 463 N.E.2d 656. Therefore, in light of our determination that Frederick's change of circumstances was voluntary and the fact that Frederick failed to pay child support and other obligations, we hold that the trial court's contempt finding was proper.

Likewise, we hold that because the finding of contempt was proper, the awarding of attorney fees and the imposition of a suspended jail sentence were proper and did not constitute an abuse of discretion. See *Rand v. Rand* (1985), 18 Ohio St.3d 356, 18 OBR 415, 481 N.E.2d 609; *Blum v. Blum* (1967), 9 Ohio St.2d 92, 38 O.O.2d 224, 223 N.E.2d 819.

Because we have concluded that the trial court abused its discretion in granting Frederick's motion for decrease in child support, which modification also included, in part, a decrease in the amount of life-insurance obligations he was to maintain for the children's benefit and a decrease of fifty percent of his prior

obligations relating to tuition, uncovered medical expenses, school expenses and health insurance coverage, and which modification also terminated his obligation to contribute to the children's educational trust funds except for a contribution of $4,700 to his eldest child's trust fund for the arrearage prior to the filing of Frederick's motion, we need not address Frederick's argument as to whether the trial court abused its discretion in its application of the modification.

Accordingly, the judgment appealed in No. C–920660 is reversed and the cause is remanded to the trial court for further proceedings in accordance with law not inconsistent with this opinion. In the appeal numbered C–920690, the judgment of the trial court is affirmed.

*Judgment accordingly.*

HILDEBRANDT and GORMAN, JJ., concur.